UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STANLEY F. FROMPOVICZ JR, | : | |
| Plaintiff, | : | |
| v. | : | No. 17-cv-02790 |
| DAVID HISSNER, *et.al*, | : | |
| Defendants. | : | |

**O P I N I O N**
Defendants' Motion for Summary Judgment, ECF No. 37 – Granted
Plaintiff's Partial Motion for Summary Judgment, ECF No. 38 – Denied

**Joseph F. Leeson, Jr.**　　　　　　　　　　　　　　　　　　　　　　**January 21, 2020**
**United States District Judge**

## I.　　INTRODUCTION

In this civil rights suit, the Plaintiff, Stanley F. Frompovicz Jr, owned land on which he pumped and sold water to bottlers. However, after a positive test for *E. coli* and total coliform, the Pennsylvania Department of Environmental Protection (the DEP) issued a Field Order temporarily ceasing operations until Frompovicz implemented the corrective measures set forth in the Field Order. To date, Frompovicz has failed to implement the corrective measures set forth in the Field Order. Frompovicz objected to his treatment by the DEP, including his treatment relative to similar businesses.

Frompovicz asserts various civil rights claims against Defendants David Hissner, Lisa Daniels, Dawn Hissner, Lynne Scheetz, Rod Nesmith, Jeffrey Allgyer, David Mitter, Peter Mangak, Todd Ostir, Brian Yagiello, Brian Busher, Jason Minnich, Joshua Krammes, and DEP John Does #1-10 of the DEP, and Lydia Johnson, Gary Landiak, Judith Miller, and Pennsylvania

Department of Agriculture John Does #1-10 of the Pennsylvania Department of Agriculture (collectively, defendants) in their individual and official capacities. He asserts substantive and procedural due process claims for the issuance of the Field Order, a Takings Clause claim, an Equal Protection claim, a retaliation claim pursuant to Section 1983, and a conspiracy claim pursuant to Section 1983.

The parties filed cross-motions for summary judgment, with Frompovicz only moving for summary judgment on Counts One and Four. Based upon a review of the law, there is no genuine dispute of material fact, and Frompovicz's claims fail as a matter of law. For the following reasons, Defendants' motion for summary judgment is granted and Frompovicz's partial motion for summary judgment is denied.

## II. FACTUAL BACKGROUND

The following facts are undisputed:

Frompovicz is the owner of Far Away Springs, a business entity with sites in South Manheim Township and Brandonville. Def. Stat. Facts. ¶ 1; ECF No. 37-1. The Manheim Township site is known as "Far Away Auburn" and the Brandonville location is known as "Far Away Brandonville." *Id*. at ¶ 2. In 2002, the DEP issued Public Water Supply Permit No. 3546502 to Frompovicz for the operation of Far Away Auburn as a spring water source and bulk water hauling system. *Id*. at ¶ 3. Frompovicz has a separate DEP Public Water Supply permit for Far Away Brandonville, which remains active today. *Id*. at ¶ 5.

Defendants are responsible for enforcing the Pennsylvania Safe Drinking Water Act (SDWA), 35 P.S. §§ 721.1-721.17, by promulgating regulations published in Title 25, Chapter 109 of the Pennsylvania Code. *Id*. at ¶ 3. On April 25, 2014, Defendants issued a modified version of Far Away Auburn's Public Water Supply permit to Frompovicz for "System A" by

agreement. *Id*. at ¶ 6. Between April 25, 2014, and June 2015, Frompovicz supplied water from Far Away Auburn and sold it to the Niagara water bottling plant in Hamburg (Niagara Hamburg), which was Frompovicz's only customer for water from System A. *Id*. at ¶ 8. Frompovicz's permit for Far Away Auburn states, "If no finished water is delivered in any given month, a letter shall be submitted to the Pottsville District Office . . . indicating that no finished water was hauled under the permit for the previous month." *See* ECF No. 37-2, Ex. 4.

For systems such as Far Away Auburn, the permit issued is for bottled water and vended water systems, retail water facilities, and bulk water hauling systems, collectively referred to as "BVRBs." As such, they are subject to the requirements of Subchapter J of the SDWA regulations, 25 Pa. Code §§ 109.1001-109.1009. *Id*. at ¶ 10. BVRBs are required to monitor for compliance with the maximum permissible level of a contaminant in water, pursuant to 25 Pa. Code § 109.1003(a). This includes weekly testing of *E. coli*. *Id*. at ¶ 11. If a public water supplier, like Frompovicz, receives a positive test for *E. coli*, that public water supplier must notify Defendants within one hour. *Id*. at ¶ 14. If a routine monitoring sample tested positive for total coliform, four additional check samples are required to be collected within twenty-four hours of the public water system being notified. *Id*. at ¶ 20.

On June 10, 2015, Frompovicz's weekly bacteriological sample of his water tested positive for the presence of *E. coli* and total coliform. *Id*. at ¶ 14. Frompovicz utilized Suburban Testing Labs to perform the required weekly monitoring of total coliform and *E. coli* at Far Away Auburn. *Id*. at ¶ 13. Suburban notified Frompovicz and the DEP of the positive test on June 11, 2015. *Id*. at ¶ 16. Frompovicz failed to notify Defendants within one hour per Pennsylvania law and on June 12, 2015, received an email from Defendants alerting Frompovicz of Defendants' awareness of the tainted sample. *Id*. at ¶ 16. The email additionally requested

when Frompovicz was going to notify Defendants of the tainted sample, ordered him to cease water shipments to customers, ordered him to notify existing customers of the tainted sample with a certification attesting same, and alerted him Defendants have not received monthly reporting from Frompovicz since February 2015. *Id*. Defendants further notified Frompovicz "this is going straight for a penalty assessment." *Id*. Additionally, Frompovicz failed to collect four check samples of coliform within a twenty-four-hour period, only doing so June 16, 2016, five days after the initial positive test. *Id*. at ¶ 22.

Due to Frompovicz's positive test sample for *E. coli* and total coliform, Defendants inspected Frompovicz's only customer, Niagara Hamburg on June 18, 2015. *Id*. at ¶ 24. Niagara Hamburg notified Defendants of Frompovicz's failure to alert them of the positive test samples of *E. coli* and total coliform. *Id*. at ¶ 25. That same day, Defendants issued a Field Order for Frompovicz's numerous violations. *Id*. at ¶ 27. The Field Order instructed Frompovicz to immediately cease hauling water until he completed ten corrective orders. *Id*. at ¶¶ 27, 38. The Field Order also contained a notice of appeal rights. *Id*. The Field Order would be lifted once Frompovicz satisfied the conditions. *Id*. Niagara Hamburg voluntarily instituted a recall of products potentially tainted with Frompovicz's water. *Id*. at ¶ 33.

Approximately the same time, Frompovicz accused several competitors of similar conduct. Frompovicz alleged Defendants permitted James Land of Pine Valley Springs to ship unfinished water. Pl. Dep. at 92:8-18; ECF No. 37-2. However, Frompovicz admitted in his deposition he was allowed to ship unfinished water as well. *Id*. at 93:14-18. Land's DEP permit states, "If no finished water is delivered in any given month, a letter shall be submitted to the Pottsville District Office . . . indicating that no finished water was hauled under the permit for the previous month." *See* ECF No. 37-2, Ex. 4. Defendants did issue a Notice of Violation to

Land in September 2014 before ultimately revoking his permit because he did not qualify as a public water system. *See* ECF No. 37-10. Land successfully appealed the revocation. *Id.*

Next, Frompovicz accused competitor Aqua Filter Fresh of shipping *E. coli* tainted water with no repercussions. Defendant Lisa Daniels testified at her deposition there was a positive sample for *E. coli*; but, Aqua Filter Fresh immediately rectified the issue by fixing the machinery that neutralized the *E. coli*. Daniels Dep. 118:5-120-25; ECF No. 37-6. Defendants issued an order to implement a product recall and provide documentation to Defendants about the recall. *Id.* at 119:17-20. Lastly, Frompovicz accused Mountain Springs of shipping *E. coli* tainted water. While water from Mountain Springs did test positive for *E. coli*, Defendants issued a Field Order and Mountain Springs rectified the issue which caused the positive test result. *Id.* at 152:16-153:3; 198:8-11.

Frompovicz filed his original complaint on June 19, 2017. This Court, in an Opinion and Order dated August 30, 2018, dismissed Frompovicz's complaint with leave to amend. Frompovicz filed his amended complaint on September 12, 2018, asserting a substantive due process violation, a procedural due process violation, conspiracy to deny due process, a Takings Clause violation, an Equal Protection Clause violation, and retaliation. The parties have filed cross-motions for summary judgment, with Frompovicz only filing for summary judgment on his substantive due process and Takings Clause claims.

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof

of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied*, 507 U.S. 912 (1993).

IV.     ANALYSIS

Frompovicz's amended complaint states claims against Defendants in their individual and official capacities for violations of substantive and procedural due process, a Takings Clause violation, an Equal Protection Clause violation, conspiracy to deny due process, and retaliation

for Defendants' conduct in the aftermath of the issuance of the Field Order and for Defendants' conduct relative to other water suppliers located in Pennsylvania.

Defendants maintain all of Frompovicz's claims are precluded as a matter of law. Defendants assert they followed all rules properly and treated the parties Frompovicz alleges received special treatment equally. For the following reasons, summary judgment is granted in favor of Defendants.

### A. Substantive due process claim

The parties have filed cross-motions for summary judgment on Count One, Frompovicz's substantive due process claim for his current inability to pump water on his land. For the following reasons, summary judgment is granted in favor of Defendants on Count One.

To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400–02 (3d Cir. 2003)). Because ownership of real property is protected by substantive due process, a plaintiff alleges a property interest worthy of substantive due process protection "in situations where the governmental decision in question impinges upon a landowner's use and enjoyment of property." *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 600–01 (3d Cir. 1995), *overruled on other grounds by United Artists*, 316 F.3d at 400–01.

A violation of substantive due process rights is demonstrated if the government's actions were not rationally related to a legitimate state interest or were motivated by bias, bad faith, or improper motive. *Sameric Corp., Inc. v. Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998);

*Independent Enter., Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1179 (3d Cir. 1997); *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 692 (3d Cir. 1993).

In order to survive a motion for summary judgment on a substantive due process claim, a plaintiff must present sufficient evidence from which a fact-finder could reasonably conclude that the defendants committed arbitrary and capricious government action and that they were motivated by bias, bad faith, or improper motive. *Sameric*, 142 F.3d at 590; *Independent Enter., Inc.*, 103 F.3d at 1179; *DeBlasio*, 53 F.3d at 600.

Here, there is no evidence to establish Defendants shocked the conscience with their conduct in the aftermath of the June 18, 2017 Field Order. Frompovicz proffered no evidence to suggest Defendants' committed an arbitrary and capricious government action or that they were motivated by bias, bad faith, or improper motive. The impetus for the Field Order, and the resulting aftermath, was Frompovicz failing to adhere to Pennsylvania law by not immediately notifying Defendants of a positive test sample, failing to notify his customers of the positive test sample, failing to properly additionally test for total coliform after a positive test sample, and then Frompovicz's failure to remedy the situation. The evidence shows Defendants responded to a potential public health crisis as Frompovicz knowingly shipped tainted water to his customer. Therefore, summary judgment is granted in favor of Defendants for Frompovicz's substantive due process claim.

**B. Procedural due process claim**

In Count Two, Frompovicz asserted a procedural due process violation for Defendants' conduct in the aftermath of issuing the Field Order.

Generally, to state a claim alleging a procedural due process violation, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the

8
012120

Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted).

But "a plaintiff must [also] have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). This requirement is not procedural exhaustion but ensures that "the harm alleged has occurred." *Id*. "[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." *Id*. (citing *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)); *see also Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 420–24 (3d Cir. 2008) (barring procedural due process claims because plaintiff "could have availed itself of [the] facially adequate post deprivation process").

The United States Court of the Appeals for the Third Circuit has held that procedural due process is satisfied by state administrative procedures concerning land use decisions which are reviewable only after Defendants deprivation occurs. These decisions have specifically considered zoning variances and land usage permits. *See*, *e.g.*, *Rogin v. Bensalem Twp.*, 616 F.2d 680, 694 (3d Cir. 1980); *see also Bello v. Walker*, 840 F.2d at 1128; *DeBlasio*, 53 F.3d at 598.

Here, the evidence presented establishes that Frompovicz failed to avail himself of his appeal rights after the Field Order. The Field Order contained a notice of appeal rights which instructed Frompovicz to appeal the order within thirty days if necessary. Def. Stat. Facts ¶¶ 27, 38. Frompovicz admitted in his deposition he read the Field Order and did not file an appeal within the thirty-day time frame. Pl. Dep. at 154:18-155:24. However, Frompovicz attempts to argue the continued enforcement of the Field Order, by not permitting him to draw water unless

he satisfies the conditions of the order, denies him procedural due process. This argument is misguided in light of Third Circuit precedent. Procedural due process is satisfied with notice of a hearing after the deprivation occurs in these circumstances. The Field Order deprived Frompovicz of the use of his land and provided him with appeal rights, which Frompovicz acknowledged he read. Resultantly, Defendants provided Frompovicz with procedural due process that Frompovicz failed to avail himself of. Frompovicz's deprivation already occurred while providing him with an avenue to challenge Defendants' Field Order. It was imperative for Frompovicz to rectify the issues which resulted in the issuance the Field Order, he has failed to do so. Accordingly, summary judgment is granted in favor of Defendants on Frompovicz's procedural due process claim.

### C. Takings Clause claim

In Count Four, Frompovicz's Takings Clause claim, the parties filed cross-motions for summary judgment. Frompovicz asserts the Field Order is akin to a taking because Defendants have not lifted the order. For the following reasons, summary judgment is granted in favor of the Defendants on Count Four.

The Takings Clause, as incorporated against the states by the Fourteenth Amendment, guarantees that no "private property shall be taken for public use, without just compensation." U.S. Const. amend. V. A physical taking occurs "[w]hen the government physically takes possession of an interest in property for some public purpose." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). Where no physical dispossession of property occurs, a regulation may nevertheless be deemed a "regulatory taking" if considered overly burdensome. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

"[T]wo guidelines inform the Supreme Court's regulatory takings jurisprudence." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017). "First, 'with certain qualifications . . . a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause.'" *Id*. (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001)). Additionally, where a regulation does not deprive the owner of all economically beneficial use, courts assess a "'complex of factors,' including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id*. at 1943 (quoting *Palazzolo*, 533 U.S. at 617).

Under the police power doctrine, the government may pass regulations to "protect the general health, safety and welfare of its citizens[,]" without having to compensate the aggrieved. *Akins v. United States*, 82 Fed. Cl. 619, 622 (Fed. Cl. 2008) (quoting *Amerisource Corp. v. United States*, 75 Fed. Cl. 743, 747 (Fed. Cl. 2007)). This is because,

> A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit. Such legislation does not disturb the owner in the control or use of his property for lawful purposes, nor restrict his right to dispose of it, but is only a declaration by the state that its use by any one, for certain forbidden purposes, is prejudicial to the public interests.

*Mugler v. Kansas*, 123 U.S. 623, 668-69 (1887). A state's power to legislate that which is injurious to the health, morals, or safety of the community, however, "cannot serve as a touchstone to distinguish regulatory 'takings' – which require compensation – from regulatory deprivations that do not require compensation." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026 (1992).

Not every land-use regulation or zoning change that impacts property value is considered a regulatory taking; in fact, most are not. "Land-use regulations are ubiquitous and most of them impact property values in some tangential way—often in completely unanticipated ways. Treating them all as per se takings would transform government regulation into a luxury few governments could afford." *Tahoe–Sierra*, 535 U.S. at 324. As the Supreme Court explained in *Penn Central*,

> "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law," *Pennsylvania Coal Co. v. Mahon*, 260 U.S. [at 413], and this Court has accordingly recognized, in a wide variety of contexts, that government may execute laws or programs that adversely affect recognized economic values.

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). For instance, in *United States v. Willow River Power Co.*, 324 U.S. 499 (1945), the government erected a dam that caused a three-foot increase in a river's water level. *Id*. at 509–11. The change in water level decreased the capacity of a power plant. *Id*. The Supreme Court found that this did not constitute a "taking of private property" under the Takings Clause. *Id*. *Hadacheck v. Sebastian,* 239 U.S. 394 (1915), found that a diminution in value from $800,000 to $60,000, caused by a prohibition of brickmaking within a designated area, did not constitute a taking. *Id*. *See Goldblatt v. Hempstead*, 369 U.S. 590, 594 (1962). In *Tahoe–Sierra*, a thirty-two-month moratorium on development in the Lake Tahoe area was ordered by an environmental planning agency to maintain the status quo while studying the impact of any development on the environment. *Tahoe-Sierra*, 535 U.S. at 321. This did not constitute a compensable "taking" either. *Id*. *Penn Central* held the New York City Landmarks Preservation Commission's refusal to approve plans for an approximately fifty-story office building over Grand Central Terminal did not constitute a

taking, even though an office building would have yielded more profits. *Penn Central*, 438 U.S. at 116–117.

Here, there is no evidence to establish a regulatory taking. Defendants, pursuant to their police powers in the SDWA, issued the Field Order after receiving a positive test sample for *E. coli* and total coliform. Frompovicz failed to notify Defendants, or his suppliers, of the positive sample. Suburban notified Defendants and then Defendants notified Niagara Hamburg. A public health crisis was avoided notwithstanding the failure of Frompovicz to notify the applicable parties pursuant to his legal duty. Defendants were within their power to protect the general health, safety, and welfare of the public to issue the Field Order and temporarily order Frompovicz to cease operations until he satisfied the conditions of the order. If Frompovicz followed the conditions of the Field Order, he would be able to use his property; however, to protect the public Defendants needed to issue the Field Order so the public would not consume *E. coli* infested water.

Notwithstanding Defendants' proper use of its police powers, Frompovicz's argument Defendants diminished the use of his property by 98% fails as well. Even assuming the devaluation is true, it has no merit. As stated in *Hadacheck*, a diminution in value from $800,000 to $60,000, caused by a prohibition of brickmaking within a designated area, did not constitute a taking. Additionally, Defendants' Field Order is temporary, not permanent, and is predicated upon Frompovicz satisfying the conditions of the order. Once Frompovicz satisfies the conditions of the Field Order, he can return to drawing water. Nonetheless, the Field Order does not constitute a taking as it within the police power to regulate the public health. Accordingly, summary judgment is granted in favor of Defendants for Frompovicz's Takings Clause claim.

### D. Equal Protection claim

In Count Five, Frompovicz asserts an Equal Protection violation against Defendants based upon allegations the Defendants treated him differently than his competitors.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. The United States Supreme Court has described this as "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection violation, a plaintiff must demonstrate that he is either a member of a protected class or a "class of one," and that he was treated differently than others who are similarly situated without any rational basis for the difference in treatment. *See Village of Westbrook v. Olech*, 528 U.S. 562, 563 (2000); *see also Johnson v. Fuentes*, 704 F. App'x 61, 65 (3d Cir. 2017); *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005); *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002) Persons are considered similarly situated when they are "alike in all relevant aspects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008) (internal quotation marks omitted).

A successful equal protection claim requires proof that the plaintiff was subjected to intentional or purposeful discrimination. *See Hassan v. City of N.Y.*, 804 F.3d 277, 294 (3d Cir. 2015); *Shuman*, 422 F.3d at 151. A plaintiff shows discriminatory purpose by demonstrating that the defendant took the challenged action "at least partially because the action would benefit or burden an identifiable group." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 548 (3d Cir. 2011) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (finding that a discrimination claim requires pleading facts

that show challenged policy was adopted "not for a neutral, investigative reason but for the purpose of discrimination").

To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008). "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When establishing the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

Here, Frompovicz cannot establish Defendants treated him differently than his competitors. For James Land of Pine Valley Springs, Frompovicz accused Defendants of permitting him to ship unfinished water. However, Land's DEP permit states, "If no finished water is delivered in any given month, a letter shall be submitted to the Pottsville District Office . . . indicating that no finished water was hauled under the permit for the previous month." *See* ECF No. 37-2, Ex. 4. Similar to Land's permit, Frompovicz's permit states, "If no finished water is delivered in any given month, a letter shall be submitted to the Pottsville District Office . . . indicating that no finished water was hauled under the permit for the previous month." *Id*. Frompovicz's speculation is belied by the record. Thus, Land and Frompovicz were subject to the same condition for hauling unfinished water and no party was treated differently.

Moreover, while the water for Aqua Filter Fresh and Mountain Springs did, at one point, test positive for *E. coli*, Defendants issued orders to Aqua Filter Fresh and Mountain Springs to rectify the problem, which those entities both did. Aqua Filter Fresh and Mountain Springs promptly fixed the issues which caused the orders, and the orders were lifted allowing the entities to continue distributing water. Similar to Aqua Filter Fresh and Mountain Springs, Defendants issued a Field Order to Frompovicz to remedy the reason his water tested positive for *E. coli* and total coliform. However, unlike Aqua Filter Fresh and Mountain Springs, Frompovicz has failed to remedy the issues which caused his tainted sample. Defendants treated Frompovicz, Aqua Filter Fresh, and Mountain Springs in a similar fashion. Therefore, summary judgment is granted in favor of the Defendants for Frompovicz's Equal Protection claim.

**E. Conspiracy claim**

In Count Three, Frompovicz asserts a conspiracy to violate due process against Defendants for the alleged wrongdoing in issuing the Field Order.

To state a claim of conspiracy under Secion 1983, "a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 647 (E.D. Pa. 2014) (quoting *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009)).

A Section 1983 civil conspiracy requires a predicate federal violation. *Glass v. City of Phila.*, 455 F. Supp. 2d 302, 359 (E.D. Pa. 2006). Thus, the Court's determination there is no evidence to support Frompovicz's substantive due process claim or procedural due process claim precludes Frompovicz from using these claims as the anchor violations for his conspiracy claim. *See Watlington on behalf of FCI Schuylkill Afr. Am. Inmates v. Reigel*, 723 F. App'x 137, 140

(3d Cir. 2018). Accordingly, summary judgment is granted in favor of Defendants for Frompovicz's conspiracy to violate due process claim.

### F. Section 1983 retaliation claim

In Count Six, Frompovicz asserts a Section 1983 claim for retaliation against the Defendants.

To prevail on a retaliation claim under 42 U.S.C. § 1983, plaintiff must demonstrate: (1) that he was engaged in constitutionally protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).

Here, Frompovicz failed to demonstrate he engaged in constitutionally protected activity. Thus, he cannot satisfy the first element of Section 1983 retaliation. As such, he cannot satisfy all the elements. Accordingly, summary judgment is granted in favor of Defendants on Frompovicz's Section 1983 retaliation claim.

### G. Claims against Defendants in their individual and official capacities

In all counts, Frompovicz maintains claims against the Defendants in their individual and official capacities. However, Frompovicz's claims against Defendants in their official capacities are meritless for the reasons discussed in this Opinion and summary judgment is granted in favor of Defendants for claims in their official capacities.

To establish a claim against a person in their individual capacity, Frompovicz must establish each individual defendant acting under color of law, violated his constitutional or statutory rights, and caused the alleged injury. *Fennell v. Penchishen*, No. 19-111, 2019 WL 1934877, at *3 (E.D. Pa. April 30, 2019) (citing *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir.

2005)). For the reasons stated, no constitutional or statutory violation occurred, and, therefore, summary judgment is granted in favor of Defendants in their individual capacities.

V.   **CONCLUSION**

For the reasons discussed above, this Court grants the Defendants' motion for summary judgment and denies Frompovicz's partial motion for summary judgment. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge